We'll move to our third case this morning, Oscar Munoz against Newcourse Steel. All right, good morning, Mr. Thoot. Yeah, good morning, Judge. Jeffrey Thot on behalf of the plaintiff. You may proceed whenever you're ready. Feels very good to be back in court again. We're glad to see you. May it please the court. As I stated, Jeffrey Thot on behalf of the plaintiff in this case, Oscar Munoz. In getting ready for this case, I was not stunned, but amazed that this is the second time in 2021 that this court is going to be dealing with an exculpatory clause such as that we're dealing with here. But I noticed in the Horn case, which really is factually dissimilar to the case at Barr, the court did make a point, and Judge Syk made a point a couple of cases ago, that the question is not what anything Judge Dow did or the trial court did wrong or analysis that could be criticized. The question is whether this court would have granted some re-judgment based on the record in this case. And in that line, material questions of fact are evidenced throughout this record. The United States Supreme Court said a genuine issue is not simply a metaphysical doubt as to material facts, rather a genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. And in this case, Your Honors, that is crystal clear. We're looking at an exculpatory clause here that the defendants are raising to shield themselves from liability for the injuries suffered by Oscar Munoz. If you take a look at the facts of our case, on the date in question, Oscar drives to his steel mill in Waukesha, picks up a load of scrap steel, drives it down to Kankakee. He gets in line with a whole bunch of other semi-trucks that are loaded with steel. He's told to sign this document or we won't let you in. We won't let you in to dump your load. If he does not go in that day to dump his load, he does not get paid for his day's work. It's as simple as that. He's told to dump his load, go to a designated area, sweep out the truck bed. And he's also told to use a Nucor portable ladder or a man door. Well, the record is before you that Oscar doesn't have a man door on his truck, so he absolutely has to use one of the ladders that are provided by Nucor. In the record before you, at least in Judge Dow's opinion, much is made of the fact that Mr. Munoz has done this before and he knows about the ladder. Well, he didn't know about this particular ladder. The record before you is there's six or seven of these things lying around out in the yard of the Nucor steel. He is told to use a Nucor portable ladder. Nobody inspects these ladders. That is in the record. Nobody takes a look to make sure that they're safe for the public. Nucor employees are instructed to inspect the ladders before each use. Visitors are not. That is in the record. That is the testimony of Paul Labriola, who's the safety manager of Nucor steel. Mr. Munoz delivers his load. He drives to the sweep out area. He rolls up a ladder. He goes up into his bed. He sweeps out his bed. He steps back on the ladder. And the axle, which is all rusted and corroded, and it is underneath the staircase, snaps. He tumbles down. He tears up his shoulder. He messes up his back. Those are the facts of this case. Now, they're raising in their sole defense, and the basis for summary judgment herein was the exculpatory clause. Now, in order for an exculpatory clause to be valid, it must spell out the intention of the parties with great particularity. And it will not be construed to defeat a claim which is not explicitly covered by its terms. That's what this court said in Horn. That's what the district court said in Locke. They cited to an Illinois case, Garrison versus Combined Fitness Center, which stated that an exculpatory clause, to be valid and enforceable, should contain clear, explicit, and unequivocal language referencing the types of activities, circumstances, or situations that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care. And in this way, the plaintiff will be put on notice that the range of dangers for which he assumes the risk of injury, enabling him to minimize the risks by exercising a greater degree of caution. This doesn't come close. You've got a one paragraph, vague, general clause that says, you release us from all of our negligence from the time you step foot on our property. That's it. There's nothing about equipment. There is nothing about sweeping out activities. There is nothing about that. In order to rule that there are no, as a matter of law, you would have to infer somehow that the activities that injured Mr. Munoz were encompassed by that clause. And if you will. And that's a question for the court, right? The enforceability of the exculpatory clause is not a jury question. The willful and wanton is usually a jury question. Yeah. However, if you're going to enforce it, there can be questions of fact that come in there. As Judge Cox said in the Watson case earlier that we referred to, she stated the relevant inquiry is whether the plaintiff knew or should have known that the accident was a risk that was encompassed by his release. Questions of fact easily are present as to whether or not Oscar Munoz knew or should have known that the accident was a risk that was encompassed by this release. So no, judge, in answer to your question, a jury is going to determine in this case whether or not Oscar knew or should have known that a bad ladder is encompassed by this release. The public policy part of the inquiry is a court question. Absolutely. And that's argument two. But before I get to that, if you look at the Taney case, that's Illinois law again. They clearly stated, and Magistrate Cox relied upon it in Watson, no agreement to assume unknown risks shall be inferred. You can't. In reviewing whether or not this exculpatory clause and the scope of it, you can't. How can this be characterized as an unknown risk on this record? Your client was fully aware of this activity, that the ladders were there for use and that he was expected to use them and he had been using them for years. He wasn't fully aware that the axle that's supposed to support his weight was rusted. Oh, that's not the inquiry, though. The inquiry is whether this activity is covered, the use of the ladder, the rolling ladder. With all due respect, judge, I think the valid inquiry is whether or not he knew or should have known that there was a risk of a rusty axle underneath his staircase that was provided by the defendants. No, that's actually a misstatement of the Cox case. It's not whether the defendant's exact act of negligence was reasonably foreseeable. If it's whether the risk at issue, the use of the ladder, was within the scope, was reasonably foreseeable and thus within the scope of the exculpatory clause. The use of the ladder was clearly foreseeable because he had been doing it for years. I agree, judge, but the use of a defective ladder is not. The defective part of it is not part of this inquiry. That, again, goes to my methodological point about who decides what and which questions are in the threshold analysis. I understand, judge. With regard to the public policy argument that you referred to earlier, the Illinois case that we relied upon is White versus the Village of Homewood. The facts of that case are quite simple. A person wanting to get hired by the Village of Homewood as a police officer was injured when she was doing their physical fitness testing. The argument was raised in White that there is an economic compulsion. There's a disparity in economics that rendered the exculpatory clause void as against public policy. In that case, the Village of Homewood argued, as did the defense here, that this guy could have turned around and gone and delivered steel to other places. He could not have accepted this load. In Homewood, the same argument was raised where the defendant said, well, there's thousands of police departments in the state of Illinois. This person could have applied anywhere. And in response to that, the appellate court in Illinois said, these arguments ignore the economic compulsion facing those in search of employment. To suppose that the plaintiff had any bargaining power whatsoever defies reality. That is entirely the case here. To suppose that this guy who is delivering steel to this particular plant has to sign a gate entry agreement or turn around and bring steel back to his employer, that defies economic reality. At a minimum, again, it's a question of law to say this violates public policy. But there's fact nuances here, too. Because somebody has to say or somebody has to determine whether or not there is, in fact, a disparity in the economic circumstances. I simply believe absolutely that there's question of facts in the economic disparity argument as well. Finally, Wilfo and Wanton. Quickly, we've cited the Oldsley case, wherein a court found the questions of facts surrounded the Wilfo and Wanton claim, where somebody left a rope ladder on a health club floor and somebody tripped over it and injured themselves. In this case, the defense relies upon the Garrison case. And in Garrison, there's DICTA, wherein the appellate court in Illinois says, if a plaintiff could show that the quality or integrity of equipment provided was extremely inferior, supplying it to the public could be deemed Wilfo and Wanton negligence. That's what we did. We have supplied a record to this court which shows that this defendant required my client to use its ladder. Its ladder was defective. My client was injured. There's clearly questions of fact which would support a cause of action in Wilfo and Wanton negligence. Thank you, Your Honors. I'll wait for rebuttal. That's fine. Thank you. Thank you. Mr. Gonzales. Good morning. Excuse me, Thomas Gonzales on behalf of Defendant Appellee New Court Steel Can Kiki, Inc. May it please the court. The circumstances surrounding this case are unique from every other state or federal court decision applying Illinois law to exculpatory clauses in one key way. And that is the documented and undisputed history of interaction between these parties before the operative agreement was signed for a third time in January of 2018. And before getting into the argument, I want to address one point that was raised that I think was by mistake by counsel. He referenced that there was, Mr. Munoz, there was a bunch of ladders there that he could use. And in our supplemental appendix, page 19, the testimony is in there from Oscar Munoz that it was always the same ladder he used when he was there. So it wasn't a choice of ladders. He used the same ladder when he was out there. That kind of cuts both ways, doesn't it? In which way? I'm sorry, in which way? That doesn't uniformly favor your side of the argument. He had no choice but to use the ladder. There's a problem. But he certainly was aware of that when he signed that particular agreement. And I think it would actually tend to support a claim that if this ladder was dilapidated, if it was defective as they claimed, by the time he'd been using it for three years and he had agreed to accept responsibility for either party's negligence with it, his negligence or NUCOR's, he's in a position at that point to do something, potentially to try to avoid injury. Now, the plaintiffs try to avoid the terms of this agreement by making three arguments, which I'll address in turn. The first, which you've heard, is essentially that this injury is outside the scope of this agreement's terms. Second, they make this public policy argument. And third, they argue willful and wanton conduct. I'll address each but briefly with regard to the scope of the agreement. Given the documented and undisputed history of use of this particular ladder and the plaintiff's undeniable knowledge that he was going to use that ladder when he signed that agreement, his injuries must fall squarely within the scope of that agreement. On the public policy issue, given the undisputed evidence that Mr. Munoz had other alternatives to delivering to NUCOR through his contract with Starline Trucking, the plaintiff can establish a disparity of bargaining power between these parties. And finally, even assuming these alleged failings on NUCOR's part of not inspecting or maintaining this ladder were necessary, which is not in this record, the failure to undertake these actions could constitute negligence. But it can't constitute willful and wanton conduct when there is no evidence whatsoever to establish either that NUCOR appreciated that its conduct was creating a risk of injury or that it should have discovered that its conduct was creating a risk of injury but failed to do so by conscious disregard or utter disregard of the rights of the plaintiff. Mr. Gonzalez, what do you make of the fact that NUCOR did have a sign asking its employees to inspect the ladder and no other safeguards with regard to the ladder? Wouldn't that be a question for a reasonable jury to decide willful and wanton about what level of ordinary care was exercised there or not exercised there? Well, I don't think it would because the issue in terms of whether there was a sign, and I'm not sure they're contending there was a sign that said NUCOR employees must inspect the ladder, the testimony was clear that the safety director said we tell our employees to inspect the ladder. The fact remains that the issue would have to arise to a level where NUCOR appreciated that not inspecting or not telling, essentially, Mr. Munoz to inspect a ladder would constitute willful and wanton conduct. So if we're going to look at what NUCOR tells its own employees versus what NUCOR didn't tell a frequenter, then we're going to have to make a determination that because of the failure to do so, they increased the risk of danger to these other employees. And that's certainly not here given the fact that there is no evidence in this record that inspection or maintenance or inside storage was required or would have done anything. And as I'll preview now, but as we discussed, if there was something in the record to establish that it was necessary, whether it was an owner's manual, testimony from somebody at the manufacturer, a warning label, even an expert affidavit to establish that these particular activities should have been undertaken, whether they were disputed or not, then we might have a situation where there could be an argument being made. But absent the complete lack of any of these types of materials, after more than two years during dependency of this case from when it was filed until the time the plaintiff brought his motion for summary judgment, that was the time to marshal any evidence if they had any at that point. So getting back to the scope of the agreement, much has been made about how broad this agreement is. But Illinois courts have long held that agreements can be extremely broad. And when parties enter into broad agreements, the courts such as Harris v. Walker and Cox versus US Fitness have routinely held that they will interpret the scope of that broad agreement such that the injury itself must only fall within the scope of possible dangers that ordinarily accompany an activity and are therefore reasonably contemplated by the parties. And I think it's worth taking a second just to address that test, because what it's saying is any danger that normally accompanies an activity or a task is necessarily or therefore contemplated by the parties. We don't have to have a specific listing of what particular dangers may be at issue. Oscar Munoz knew he was going to be dropping off scrap steel, and he knew he would be using that ladder when he swept out his truck. Any dangers that normally accompany those activities were reasonably contemplated by the parties when he signed that third agreement. And the Garrison decision which we cited goes a step further to remove any doubt on this issue by specifically holding that an exculpatory clause applies to equipment that a frequenter normally uses. By signing this agreement, Mr. Munoz essentially agreed to shift responsibility for the negligence with that ladder, assuming there was negligence, from Nucor to himself. And because of his undisputed knowledge that he was going to be using that ladder, those injuries are squarely within the scope of the agreement. In a similar argument, the appellant makes the claim that the agreement should not apply because the injuries are too attenuated from the agreement, and they're essentially relying on Hawkins versus Capital Fitness, where the mirror struck the frequenter in the head, along with Locke versus Lifetime Fitness, where the person had a heart attack. Now, these cases are not applicable, given the overriding history between the parties. I don't think anyone would seriously contend that having a mirror fall off a wall and hit you in the head is a danger normally associated with working out at a fitness center. Conversely, I don't know that many people would seriously rely on a ladder, regardless of whose negligence caused that fall, is not a danger normally associated with using that piece of equipment. In Locke versus Lifetime Fitness, nobody was disputing that the particular agreement would have covered ordinary negligence on the employee's part. The distinction was that there was this separate argument being made that the club failed to train its employees on how to respond to that particular emergency. Regardless of the wisdom of that decision, those allegations are not present in this matter. Nobody's claiming that Nucor failed to properly train its employees on how to inspect or maintain it. Finally, there was discussion regarding ambiguity in the brief regarding an issue of fact as to whether the ladder was required to be used. The district court correctly noted this and noted it wasn't material. Regardless of whether the ladder was required to be used by Nucor or not, Mr. Munoz did in fact use it. So moving on to the public policy arguments, essentially they're arguing disparity of the bargaining power between these two entities. And as this court noted earlier this year in the Horn decision, simply claiming I'm the little guy is not sufficient to establish disparity of the bargaining power. The plaintiff, the appellant in this matter, has the burden to show he had no alternatives. And a review of the record establishes the undisputed facts that he had a myriad of other alternatives. The testimony from Starline Trucking's president, Jesse Ball, established that he was an independent contractor. He contracted with Starline, not Nucor. And he was free to take or accept whatever, or reject whatever routes he wanted to without repercussion. Mr. Munoz never offered any testimony establishing or claiming that he would have been fired or would have had his contract struck if he hadn't driven to Nucor. And the documentation also produced in the case shows that he did in fact go to several other facilities on behalf of Starline. So when we're addressing this lack of any available alternatives, the only evidence on the issue shows that he had other alternatives. And briefly I'll address the White decision which was raised by counsel. It's worth noting in that decision that nearly from the outset the court itself specifically stated that it was the societal or social relationship between the parties that mitigated against enforcing that agreement. It wasn't that, well, she was the little guy or she had no other alternatives. It was essentially akin to an employer-employee relationship. You have an applicant who is applying to become an employee. That is not the case in this matter. We have two arm's-length entities. Finally, any alleged failings on Nucor's part were not willful and wanton conduct. Willful and wanton conduct is something more than negligence. It may be just a hair above negligence. It may be all the way up to just a hair below intentional conduct. But the cases like the Easel decision that the plaintiff relies on require either knowledge or appreciation of the hazard or failure to discover that one's conduct is creating a hazard through recklessness or carelessness. Now, nobody's claiming that Nucor knew failing to inspect this ladder created a hazard. So the plaintiff has to show that by not... Nucor should have discovered that its conduct was creating a hazard through recklessness or intentional disregard. And the problem for the plaintiff in that test is that there is no evidence here that Nucor's alleged failings were in fact failings. As I previewed at the beginning of the argument in response to the question, there is no evidence in this record that maintenance was necessary, inspection was necessary, or that the ladder couldn't be used outside. And during the two years that this case was pending, none of that evidence was brought to bear at the summary judgment stage. Appellant asks the court to essentially find an issue of fact that Nucor's conduct was willful and wanton without any evidence that the conduct was even arguably necessary. And perhaps recognizing this deficiency, both at the district court level and in their brief, they go make a common-sense argument. They claim that the easel decision was decided on common sense, that it was obvious that a rope ladder posed a tripping hazard. But as the district court pointed out and the decision itself makes abundantly clear, the easel decision was decided on the undisputed fact that the defendant knew about the hazard. And the defendant took steps to ameliorate that hazard, although those steps were obviously unsuccessful. And in those circumstances, when you have an acknowledged knowledge of that particular hazard, there may be an issue of fact there. In this case, there is no evidence or even an inference that Nucor was aware that its conduct created a hazard because there's no evidence that the conduct itself was a hazard. Ultimately, at the bottom of this pyramid, in terms of what is lacking, we don't know why this particular ladder failed. It may have been a defect, as the plaintiff alleged when they sued the manufacturer. But without that evidence, there simply cannot be an inference of Wilflin-Wanton conduct. Thank you. Thank you. Thank you. All right. I just thought you had a brief period of rebuttal. I won't be very brief, Judge. Primarily, when counsel indicated that there was no evidence in the record that there were a number of ladders on the site, again, I respectfully disagree. If you take a look at page 14 of the deposition of Paul Labriola, it is attached definitely in our appendix and probably in theirs. I think it's document number 14 and number 83.8. I asked Mr. Labriola, I said, you know, when you purchase these ladders, he said, the staircases, I don't see purchase orders. I mean, we have a number of these throughout the site. And another question, I mean, obviously, when we visited there, whatever day that was, did you have a number of ladders on the site? Correct. Answer, correct. They're stored outside? Correct. Yes. And the elements? Yes. How often are they inspected? We require our guys to inspect them prior to use. Well, are they expected to tip them over and take a look at the axles prior to use? Answer, there's no formal document or formal procedure. The things we typically ask them to do is make sure they're clean and in good condition. So, yeah, there are a number of ladders out there. Did Oscar Munoz use the same ladder every time? No, I don't think that's in the record. With regard to the cause that this ladder went down, I showed Mr. Labriola's photographs. Did you go out and investigate the condition of the ladder, sir, after you found out that somebody fell? He said, yes, we went and we took a look at the ladder and there was a break in the weld by the wheel axle. Do these pictures accurately depict the break in the weld you found? Yeah. And the break in the weld caused the staircase to be unstable? That was our assumption. So, yes, there is plenty of evidence in this record that that ladder was unsafe, that the weld and the axle supporting the staircase was unsafe, that it was rusty, that they expected their employees to inspect these ladders every time they used them, and it was still in that condition. Those are questions of fact. Those are questions of fact that preclude summary judgment on the scope of the exculpatory clause as well as on the willful and want. And, again, yes, the court in White v. Homewood did analogize the prospective employee as akin to an employer-employee relationship. The same can be said here. This is an independent contractor who makes his living dumping steel. He said, sign this or you don't get to dump steel. Sign this or you don't get paid. That is a disparity in economic situation. That too, Judge, I think is a question of fact that precludes summary judgment in this case. Thank you very much. Thank you. Our thanks to both counsel. The case is taken under advisement.